UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-Cv-61328-COHN
MAGISTRATE JUDGE P.A. WHITE

CRAIG MACK,                          :

    Petitioner,                    :

v.                                   :              <u>REPORT OF</u>
                                                    <u>MAGISTRATE JUDGE</u>
EDWIN G. BUSS,                       :

    Respondent.                    :
_____

## <u>I. Introduction</u>

Craig Mack, who is presently confined at the Charlotte Correctional Institution in Punta Gorda, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to United States Code Title 28, Section 2254, attacking his conviction and sentence in case number 06-18683, entered in the Seventeenth Judicial Circuit Court for Broward County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus (DE# 1), Mack's memorandum addressing limitations (DE# 11), the Respondent's response to an order to show cause and appendix of exhibits (DE# 12), and Mack's reply (DE# 14).

Construing the *pro se* movant's arguments liberally, he appears to raise the following claims in his Section 2254 petition:

1.  The trial court erred in restricting cross-examination of the State's DNA expert;
2.  Trial counsel was ineffective for failing to ensure a juror was not actually biased;
3.  Trial counsel was ineffective for failing to investigate, consult with, and/or call as expert witnesses crime scene and laboratory technicians; and
4.  Trial counsel was ineffective for failing to request a <u>Frye</u>[1] hearing.

## II. Procedural History

Mack was charged with the following counts relating to the armed robbery of a jewelry store: Count (1), robbery with a firearm; and Counts (2)-(5), aggravated assault with a firearm. (DE# 12-2 at 12). Mack rejected a plea offer and insisted on proceeding to a jury trial.[2]

During jury selection, the prosecutor asked a number of prospective jurors what they thought their jobs would be if selected for the jury. The following transpired with regards to prospective juror Shyla Jasinski:

> [by Mr. Ribas] Ms. Jasinski, ... [w]hat do you think your job would be [as a juror]?
> MS. JASINSKI: Basically what everyone else has said. Listen to the facts and see it from an impartial standpoint.

(DE# 12-4 at 109).

---

[1] <u>Frye v. United States</u>, 293 F. 1013 (D.C.Cir. 1923).

[2] Mack was removed from the courtroom because he was uncooperative and disruptive. (DE# 12-4 at 56-57, 228, 232-33, 244). He watched the majority of the trial on television from a nearby jury room. The trial court concluded, based on its own observations and the opinion of a mental health expert, that Mack was malingering and was actually highly intelligent, manipulative, and fully aware of the proceedings. (DE# 12-4 at 223);(DE# 12-5 at 3).

2

The prosecutor then stated as follows regarding the burden of proof, which the panel indicated it understood:

> [By Mr. Ribas] ... And this is a very, very important point. When it comes to the presentation of evidence, **when it comes to the issue of burden of proof, you look to me and me alone.** You look to my shoulders, you look to my table. Never, ever do you look behind me where Mr. Mack or Mr. Serper are sitting. I, being the prosecutor, have the sole responsibility to present the evidence and prove beyond a reasonable doubt.
> And the law says there are elements, I like to use the word ingredients. Say the judge says there's five ingredients to what robbery with a firearm is. The law will tell you I have to prove every single one of those; one, two, three, four and five beyond a reasonable doubt. Not beyond all doubt, but beyond a reasonable doubt which is the highest burden in our system. All five. Four, close, but guess what? Not good enough. And it's a not guilty. Six is too much. But if it's five, all five have to be proven beyond a reasonable doubt, and it's me and me alone that has to prove it. My shoulders, my table, based upon the evidence.
> And what's the evidence? The answers you hear from what? From this witness stand, from witnesses. And physical evidence, things you can actually physically take back with you. Fingerprints, DNA evidence, photographs, things of that nature. Physical evidence, testimony and reaching your deliberations and verdict. What I say, what Mr. Serper says are questions, are not evidence.... **I alone have the burden to prove beyond a reasonable doubt the elements and you reach your verdict**....
> Is everyone okay with that? You only look to me and me alone.
> Ms. Martin, are you okay with that? Ms. Blet, **everyone okay with that? Excellent**.

(DE# 12-4 at 118-20) (emphasis added).

The prosecutor then asked the panel members to raise their hands if they or family members had been arrested and convicted of a crime. Jasinski raised her hand and explained she had recently

3

finished probation for a DUI:

> [by Mr. Ribas] ... Who was arrested, ma'am?
> MS. JASINSKI: I was. I had a DUI.
> MR. RIBAS: How long ago was that?
> MS. JASINSKI: Just finished probation in May.
> MR. RIBAS: So fairly recently. I'm sorry to go through this with you, but I imagine it was here in Broward County?
> MS. JASINSKI: Uh-hun.
> MR. RIBAS: You finished probation, so it was a probationary type sentence. Is there anything about your experience, ma'am, with the police officers, the court system, anything as a whole which would affect your ability in this case?
> MS. JASINSKI: No.

(DE# 12-4 at 124-25).


When defense counsel had the opportunity to question the panel, he Jasinski whether Mack was guilty or innocent and she responded: "He's innocent until proven guilty beyond a reasonable doubt."(DE# 12-4 at 152).


Defense counsel then asked Jasinski and several other jurors whether they would want to see Mack testify. Jasinski stated as follows:

> [BY MR. SERPER] ... Ms. Jasinski, if you're chosen to be on this jury, do you want to see Craig testify?
> MS. JASINSKI: Yeah.
> MR. SERPER: Okay. How come you feel that way?
> MS. JASINSKI: Just — I don't know. To hear what he has to say.
> MR. SERPER: Okay.
> MS. JASINSKI: To hear his side, I guess.

(DE# 12-4 at 169).


After a juror stated confusion about the right to silence, the

4

trial court read right to silence to the panel. (DE# 12-4 at 171). Counsel confirmed with several jurors that they understood the right but did not specifically address Jasinski again.

The court gave counsel ten strikes per side during jury selection. (DE# 12-4 at 176). Defense counsel exercised six peremptory challenges before accepting a panel. (DE# 12-4 at 181, 183, 138, 193, 194, 195). Mack would not state whether or not he approved of the panel. (DE# 12-4 at 199-201)

Four employees of Beverly's Jewelers testified they were working on Monday, April 16, 2006, at 2:00 PM, when two men with their faces covered came into the store. (DE# 12-4 at 274, 279-80). One of the men pointed a gun at the store's occupants and told them not to move so nobody would get hurt. (DE# 12-5 at 18-20, 321-22). The other man smashed three glass jewelry cases with a hammer, grabbed jewelry, and put it into a bag. (DE# 12-4 at 282, 289). One of the employees testified that the man who grabbed the jewelry was holding a hammer in one hand, and a bag and a handgun in the other. (DE# 12-5 at 22). The men backed out of store after a few minutes and left together in a silver or gray car. (DE# 12-4 at 285); (DE# 12-5 at 29, 51, 63). Police arrived a short time later and told the employees not to touch the glass cases. (DE# 12-4 at 285-86); (DE# 12-5 at 29). The glass cases, which had been cleaned that morning, had blood inside them which was not there earlier. (DE# 12-4 at 276); (DE# 12-5 at 29). None of the store employees had cut themselves. (DE# 12-5 at 15). The stolen jewelry was worth $220,000. (DE# 12-5 at 28). The employees were unable to make an identification because the mens' faces were covered. (DE# 12-5 at 52). The State played the Beverly's surveillance videotape for the jury. (DE# 12-4 at 287-88).

Crime Scene Technician Christine Sasso testified she is trained in forensic photography, and DNA and fingerprint collection. (DE# 12-5 at 68, 71). She arrived at the store at approximately 2:15 PM. (DE# 12-5 at 71). She found and collected a black glove from the ground outside the front door and a hammer from a stool inside the store. (DE# 12-5 at 72-73). Three shattered glass jewelry cases had blood on them. She collected six samples individually with sterile swabs. (DE# 12-5 at 80). She also lifted twelve latent fingerprints from the glass cases but was unable to obtain prints from the hammer. (DE# 12-5 at 85, 98). She fingerprinted the store employees and took an oral swab from Mack for comparison with the evidence. (DE# 12-5 at 90, 92). Sasso, Crime Scene Technician Tammy App, and Detective Angela Schorb testified about the chain of custody that brought the evidence to the crime lab for analysis. (DE# 12-5 at 84, 108, 149).

Latent fingerprint examiner Lewis Ferguson testified that two of the twelve latent cards Sasso lifted were not of value. (DE# 12-5 at 112, 120). Three more were unidentified palm prints. (DE# 12-5 at 120). Two others matched Beverly's employees. (DE# 12-5 at 122). He rolled Mack's fingerprints and matched these standards to the remaining two latent prints from the crime scene using techniques he had learned during his extensive experience and training. (DE# 12-5 at 121, 123-25).

DNA analyst from the Broward Sheriff's Office ("BSO") crime lab, Kevin Noppinger, testified he analyzed the six blood samples collected from the scene using techniques he described in detail. All six samples matched Mack. (DE# 12-5 at 167, 181). On cross-examination, defense counsel attempted to question Noppinger about past problems the BSO lab had with contamination during DNA analysis:

[by Mr. Serper] Since you worked at the Broward County sheriff's office crime lab, **has there ever been an internal investigation in regards to the crime lab DNA procedures or the way DNA has been preserved, any problems with contamination at the crime lab**?
MR. RIBAS: Judge, I'm going to object to the relevancy as to this specific case.
MR. SERPER: I'll go sidebar.
THE COURT: I know. Basically, I'm familiar with the argument and I'll let you proffer later on if you want for appeals. But you need to stay within the four corners of this case please.
MR. SERPER: I'm sorry, Judge.
THE COURT: Within the four corners of this case.
MR. SERPER: Of course. Of course. I'm just trying to rephrase my question.
BY MR. SERPER:
Q. **Since you worked at the crime lab, has there been an occasion where there have been problems with the DNA portion of the crime lab in regards to contamination or the procedures that weren't being conducted as being faulty**?
MR. RIBAS: Judge, I'm going to respectfully object. Unless Mr. Serper is referring to any problems with this specific case at hand before the jury.
THE COURT: Sustained.

(DE# 12-5 at 182-83) (emphasis added).

During a sidebar conference, defense counsel explained he was trying to establish there had been problems with DNA analysis procedures in the past that resulted in potential contamination. The purpose of this questioning was to show the jury that "there could be problems at the crime lab, problems with the analysis and to show that it's not 100 percent infallible." (DE# 12-5 at 185).

The court sustained the State's relevancy objection but noted defense counsel was free to explore relevant issues with the expert:

THE COURT: The Court is sustaining the objection. That does not mean the Court is not allowing – this is an

7

expert on the stand – any issues of potential contamination, potential problems with DNA testing in general, the possibility of errors, you know, all those types of things are subject to cross-examination. To go in to a specific time in a particular lab, and I guess we're all referring to the time when what's her name?

MR. RIBAS: Ms. Baird.

THE COURT: Ms. Baird used the same scissors, I believe it was something to the extent to cut the different packages, and then there was evidence of potential contamination, if not actual contamination, the lab was placed on review, the procedures were changed to secure that it wouldn't happen again, where now each sample is opened on different days so the same equipment is not being used was put in place. And since, then, the lab has been recertified and passed all of the proficiency tests and so on to the best of my understanding.

Since I hear these matters in different cases, the fact that it happened in the past to be offered to this case now with nothing else to link it is just to basically say hey listen, you have problems in the past so that's the propensity of you having problems now.

Unless there's something else that you can show, Mr. Serper, that in this particular case similar procedures were used at the time when that contamination took place, you know, we have to stay within the four corners of the complaint. Its' the same as saying the defendant used drugs in the past or sold drugs in the past means that he sold them now or a police officer has had a prior bad arrest means it's a bad arrest now.

I think in relevancy it's unfair, but I'm not limiting you in cross-examining this expert on any issues of potential errors, contamination or anything else generally.

MR. SERPER: All right. Thank you.

(DE# 12-5 at 185-86).


Biology professor Dr. Martin Tracey testified as the State's expert in genetics and population frequency. (DE# 12-5 at 192). Based on Noppinger's report, he calculated the probability of this profile matching someone other than Mack is one in fifty-eight quadrillion. (DE# 12-5 at 197).

Mack was arrested seven months after the offense based on the scientific evidence. (DE# 12-5 at 154). He agreed to speak to detectives after being advised of his rights and denied involvement in the robbery in an audiotaped statement. (DE# 12-5 at 156-58).

In closing, defense counsel argued there was no eyewitness testimony identifying Mack, that he could not be identified from the surveillance videos, and there was no jewelry or other evidence connecting him to the robbery. He argued the State was just relying on the fingerprint and DNA experts' testimony which are opinions that are not necessarily correct. (DE# 12-5 at 246). If the jury believed Mack was present at the robbery, however, counsel argued he did not hit, touch, or injure anyone or make any threats.

The jury found Mack guilty of all counts. (DE# 12-2 at 91); (DE# 12-5 at 287). The court adjudicated him guilty and sentenced him to: Count (1), a minimum mandatory term of life imprisonment as a prison releasee reoffender plus a ten-year minimum mandatory for a firearm; and Counts (2)-(5), fifteen years' imprisonment with a ten-year minimum mandatory as a violent career criminal, and a three-year minimum mandatory as to Count (5) for a firearm, concurrent. (DE# 12-3 at 36, 39, 54); (DE# 12-6 at 21).

On direct appeal, Mack argued the trial court erred in restricting cross-examination of the State's DNA expert. (DE# 12-6 at 24). The Fourth District Court of Appeal *per curiam* affirmed on June 18, 2008. Mack v. State, 984 So. 2d 1262 (Fla. 4th DCA 2008) (4D07-3616).

On July 17, 2009, Mack filed a Rule 3.850 motion for post-conviction relief arguing counsel was ineffective for failing to: (1) challenge for cause or exercise a peremptory challenge against

9

juror Jasinski who possessed a partial state of mind and was unable to follow the law; (2) subject the State's evidence to adversarial testing by presenting independent expert crime scene and lab technicians to challenge the accuracy and positiveness of the scientific evidence; and (3) move to exclude DNA evidence pursuant to <u>Frye</u>. (DE# 12-6 at 260). The State filed a response arguing Claim (1) was legally insufficient; Claim (2) was legally insufficient and speculative; and Claim (3) was legally insufficient and meritless. (DE# 12-6 at 77). The court denied relief for the reasons set forth in the State's response. (DE# 12-6 at 70). The Fourth District affirmed. <u>Mack v. State</u>, 59 So. 3d 325 (Fla. 4th DCA 2011) (4D10-684). The mandate issued on May 20, 2011. (DE# 12-6 at 275).

Mack filed the instant petition on June 13, 2011.[3]

### III. Statute of Limitations

The Respondent concedes the instant petition was timely filed.

### IV. Exhaustion

The Respondent concedes Claims (1) and (3) are exhausted but argues Claims (2) and (4) are unexhausted.

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement.

---

[3] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). However, Mack failed to complete the certificate of service indicating the date he surrendered the petition to prison authorities for mailing so the actual filing date is used here.

O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982). In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in State court in a procedurally correct manner. Id. Moreover, the habeas applicant must have presented the State courts with the same federal constitutional claim that is being asserted in the habeas petition. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)); Anderson v. Harless, 459 U.S. 4, 6 (1982)). A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard, 404 U.S. at 275-77. To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337 (11th Cir. 2007) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995)). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

The record reveals that Mack successfully exhausted Claims (2) and (4) in the Florida courts. In Claim (2), he presently argues that counsel was ineffective for failing to ask a juror follow-up

questions to ensure she was not actually biased, and for failing to exercise a cause or peremptory challenge to strike that juror. Mack sufficiently raised these arguments in his Rule 3.850 motion by arguing "counsel never once individually attempted to rehabilitate Ms. Jaisinski," and "counsel should have moved to challenge Ms. Jasinski for cause, or at the least used peremptory strike...." <u>See</u> (DE# 12-6 at 263-64).

In Claim (4), Mack presently argues that counsel was ineffective for failing to request a <u>Frye</u> hearing that would have resulted in the DNA evidence being found inadmissible. Mack adequately raised this claim in his Rule 3.850 motion by arguing "trial counsel failed to move to suppress State's DNA evidence and prompt trial court to conduct "Frye" test...." <u>See</u> (DE# 12-6 at 270).

Accordingly, the undersigned recommends that the Respondent's exhaustion argument be rejected and that all Mack's claims be addressed on the merits.

<u>V. Standard of Review</u>

A prisoner in State custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

In the instant case, the Petitioner seeks habeas relief based on ineffective assistance of counsel. The United States Supreme Court clearly established the law governing such claims in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to

the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

## VI. Discussion

**(1)  Expert Witness Cross-Examination**

Mack contends the trial court erred by restricting cross-examination of the State's DNA expert regarding prior BSO lab errors. Mack argues this denied him due process and violated the Florida Constitution Article I, Sections 2, 9, and 16, and the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and warrants a new trial.[4]

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. The principle protection derived from this right is the

---

[4] It appears that Mack is attempting to present a Sixth Amendment Confrontation Clause argument and this claim will be analyzed as such. The alleged violations of the Florida Constitution that he identifies provide no basis for federal habeas relief.

14

right to effective cross-examination of the State's witnesses. <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004). The Confrontation Clause guarantees only the *opportunity* for *effective* cross-examination; a trial court retains wide discretion to limit cross-examination within those limits. <u>See</u> <u>United States v. Owens</u>, 484 U.S. 554, 559 (1988); <u>Childers v. Floyd</u>, 642 F.3d 953, 972-73 (11th Cir. 2011). Reasons to limit cross-examination are the same in the Florida and Federal rules of evidence and include harassment, prejudice, confusion of the issues, and marginal relevance. <u>Childers</u>, 642 F.3d at 975; <u>see</u> <u>Steinhorst v. Wainwright</u>, 477 So. 2d 537 (Fla. 1985) (Florida law provides that cross-examination is properly limited to relevant matters within the scope of direct examination); <u>McClain v. State</u>, 395 So. 2d 1164 (Fla. 2d DCA 1981) (inquiries into collateral matters should only be allowed when the affect the witness' credibility).

Here, defense counsel attempted to question the State's DNA expert regarding past lab procedures that had resulted in an internal investigation regarding possible contamination. The trial court sustained the State's relevancy objection to counsel's general questions about past errors, but permitted counsel to inquire as to any issues that could have specifically affected Mack's case. This ruling was correct under the Florida and Federal rules of evidence because the lab's past issues had no arguable bearing on the validity of the results in Mack's case because the questionable practices involved a different BSO employee, the lab's procedures had been corrected, and the lab had been re-certified. The cross-examination was therefore wholly irrelevant to Mack's case, would have been more prejudicial than probative, and risked confusing the jury. <u>See</u>, <u>e.g.</u>, <u>United States v. Novaton</u>, 271 F.3d 968 (11th Cir. 2001) (prior investigation and reprimand of officer that did not indicate lack of truthfulness was irrelevant and

properly excluded on cross-examination); <u>United States v. Gabriel-Martinez</u>, 321 Fed. Appx. 798 (11th Cir. 2008) (court did not abuse its discretion by limiting testimony that would have invited the jury to make conclusions based on attenuated inferences and speculation). The trial court's limitation on cross-examination under these circumstances was not contrary to or an unreasonable application of clearly established federal law.

(2) <u>Juror Bias</u>

Mack claims trial counsel was ineffective for failing to ensure a prospective juror was not actually biased by questioning her about the presumption of innocence and exercising either a cause or peremptory challenge to strike her. He claims proper questioning would have revealed her bias and resulted in her removal from the panel, and that the record does not refute the proposition that she found Mack guilty because of his decision not to testify. He seeks remand for attachment of records refuting his allegations, a hearing to question the juror about her desire to hear Mack testify, or a new trial.

A criminal defendant has a Sixth Amendment right to a trial by an impartial jury. U.S. Const. Amend. VI. A juror is impartial if he can "lay aside his opinion and render a verdict based on the evidence presented in court." <u>United States v. Simmons</u>, 961 F.2d 183, 184 (11th Cir. 1992). To exclude a prospective juror for cause, a party must demonstrate through questioning that the juror lacks impartiality. <u>Wainwright v. Witt</u>, 469 U.S. 412, 423 (1985). That is, the party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." <u>United States v. Chandler</u>, 996 F.2d 1073, 1102 (11th Cir. 1993). A juror is actually biased if he

16

is not "capable and willing to decide the case solely on the facts before him." <u>Rogers v. McMullen</u>, 673 F.2d 1185, 1190 (11th Cir. 1982). A defendant claiming ineffective assistance of counsel during voir dire must show that counsel's actions were "so ill chosen that it permeates the entire trial with obvious unfairness." <u>Teague v. Scott</u>, 60 F.3d 1167, 1172 (5th Cir. 1995). Because empaneled jurors are presumed to be impartial, a petitioner must show the selection process produced a biased juror to satisfy <u>Strickland's</u> prejudice prong. <u>Ingram v. Zant</u>, 26 F.3d 1047 (11th Cir. 1994); <u>Raulerson v. Wainwright</u>, 753 F.2d 869 (11th Cir. 1985); <u>see</u> <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) (examining whether the results of trial would have been different absent the alleged jury selection error).

In the instant case, no deficient performance is evident. The juror at issue, Shyla Jasinski, indicated she understood the burden of proof and would presume Mack innocent until proven guilty beyond a reasonable doubt. Defense counsel then asked her whether, if she was chosen as a juror, she *want[ed]* to see Craig testify." (DE# 12-4 at 169). She responded "yes, ... [t]o hear what he has to say ... [and] [t]o hear his side, I guess." <u>Id.</u> The desire to hear Mack's side of the story does not indicate the juror would deviate from the burden of proof, would disregard the court's instructions, or would find Mack guilty if he did not testify. Rather, she simply stated a preference to hear his side of the story. Considering Jasinski's understanding of the applicable legal standards and unequivocal statements that she would follow them, this statement of preference to hear his side of the story does not indicate she was biased or would deviate from the burden of proof.

Counsel cannot be deemed deficient for failing to question this juror further or attempt to strike her for cause because her

answers did not raise the inference of impartiality. <u>Bell v. United States</u>, 351 Fed. Appx. 357 (11th Cir. 2009) (counsel was not ineffective for failing to further question or strike a juror who said her work with children might affect her impartiality if the offense involved drugs because multiple other questions and answers during *voir dire*, plus the court's instructions to the venire, established the juror could be impartial).

Nor was counsel deficient for deciding not to exercise a peremptory challenge to strike her. The juror had a recent DUI that reasonable counsel could have concluded would make her sympathetic to Mack's situation. <u>Harvey v. Warden, Union Corr. Inst.</u>, 629 F.3d 1228, 1247 (11th Cir. 2011) (equivocal statements by juror did not support the conclusion that competent counsel would have inferred the juror was willing to vote for the death penalty - she did not state she either favored or was opposed to the death penalty - deference to counsel's strategy was warranted). Further, defense counsel had exercised only six of his ten peremptory challenges when he accepted the jury panel, indicating the decision to keep this juror was a strategic one. <u>Simmons</u>, 961 F.2d at 186 (the fact that defense counsel did not use all available peremptory challenges suggests there might have been a strategic reason for retaining the jurors in question).

Mack has failed to demonstrate how counsel's alleged deficiency in *voir dire* prejudice him. He makes conclusory statements that a cause challenge would have been granted had counsel sought it, and that the record does not refute the contention that the juror voted to find Mack guilty because he chose not to testify. However, he has made no effort to demonstrate the juror at issue was actually biased. Mack's speculative allegation that the juror might have voted to find Mack guilty

because he did not testify is entirely without foundation in the record and insufficient to show the outcome of trial would have been different had counsel performed effectively. See Cox v. McNeil, 638 F.3d 1356 (11th Cir. 2011) (assuming voir dire was deficient, petitioner failed to allege how he was prejudiced by this deficiency, so the Florida Supreme Court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law).

(3) Expert Witnesses

Mack contends trial counsel was ineffective for failing to investigate, consult with, and/or crime scene and laboratory technicians as defense experts. He claims he told counsel before trial he was not there and that the DNA and fingerprint evidence could not be his - that it was manipulated or switched to implicate him and asked counsel to investigate and present experts in DNA and fingerprint collection and analysis. He believed counsel would raise at trial past problems with the BSO lab which would discredit the fingerprint and DNA evidence, but counsel failed to do so. He claims proper investigation and defense experts would have revealed mishandling and manipulation or switching of DNA and other crime scene evidence, which would have cast doubt on the accuracy of the State's evidence and would have better prepared counsel to cross-examine State witnesses.

As a preliminary matter, Mack's claim is inconsistent with other assertions in his habeas petition and therefore lacks credibility. On one hand, he denies he was ever present at the scene and therefore the evidence must have been manipulated or switched. (DE# 1 at 18). On the other hand, he states in a different section of his petition that the jewelry store is open to public, suggesting his fingerprints could have been left there

19

innocently. (DE# 1 at 5). His self-serving and inconsistent claims are wholly unsupported by the record and are insufficient to support relief. This claim also fails on the merits because he has failed to demonstrate counsel was ineffective.

The Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability or realistic chance for success. <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009). "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." <u>United States v. Guerra</u>, 628 F.2d 410, 413 (5th Cir. 1980); <u>West v. Sec'y, Dep't of Corr.</u>, 151 Fed. Appx. 820 (11th Cir. 2005). "[N]o absolute duty exists to investigate particular facts or a certain line of defense." <u>Chandler v. United States</u>, 218 F.3d 1305, 1317 (11th Cir. 2000). Under <u>Strickland</u>, "counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." <u>Chandler</u>, 218 F.3d at 1317.

Mack complains that counsel should have obtained defense experts to testify that the evidence must have been manipulated or switched. However, he fails to identify any error in the procedures that the State's experts described in detail at trial. Nor has he explained precisely how defense experts' analysis would have revealed "switching" or "manipulation" of the evidence. Nor has he explained how defense experts' analysis of the same evidence would have resulted in a different outcome. Reasonable counsel could have concluded that retaining experts under these circumstances would have been a pointless exercise. No deficiency is apparent. <u>See generally Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001) (counsel has no duty to raise issues which have little or no chance

of success).

(4)  <u>Frye Hearing</u>

Mack argues trial counsel was ineffective for failing to request a <u>Frye</u> hearing and motion *in limine* to exclude the State's scientific evidence. He argues the prosecutor would not have been able to satisfy the <u>Frye</u> test had counsel attacked the State's methodology. As a result, he argues, the DNA and fingerprint evidence would have been held inadmissible and the State would not have been able to prove its case had counsel performed effectively.

Under Florida law, a <u>Frye</u> hearing is necessary to determine whether an expert scientific opinion is admissible. <u>Zack v. State</u>, 911 So. 2d 1190, 1197 (Fla. 2005). The proponent of scientific evidence must prove the methodology used has gained general acceptance in the scientific community. However, a <u>Frye</u> hearing is not necessary when the science at issue is not new or novel. <u>Id.</u> at 1198.

Neither fingerprinting nor DNA evidence is new or novel and both are generally accepted in Florida so long as the testing procedures are properly conducted. <u>Hayes v. State</u>, 660 So. 2d 257 (Fla. 1995) (taking judicial notice that DNA test results are generally accepted so long as the testing procedures are accepted); <u>Martinez v. State</u>, 549 So. 2d 694, 697 (Fla. 5th DCA 1989) (noting the scientific basis for fingerprint testimony is well-established and accepted); <u>see also</u> <u>Kennedy v. State</u>, 853 So. 2d 571 (Fla. 4th DCA 2003) (enhancement of otherwise available evidence - fingerprints - was not an innovative scientific theory).

Mack generally alleges the BSO's methods were faulty that the DNA and fingerprint evidence would not have been admitted but for

counsel's failure to request a <u>Frye</u> hearing. However, he fails to explain precisely what faulty procedures were employed or how these procedures affected the DNA and fingerprint test results that positively identified Mack. The trial transcript contains exhaustive testimony from the State's experts describing the fingerprint and DNA collection procedures, analysis methods, and chain of custody. Counsel cannot be deemed deficient for failing to request a <u>Frye</u> hearing or motion *in limine* where there is absolutely no basis in the record to object to the DNA or fingerprint collection or testing procedures. <u>See</u> <u>Knowles</u>, 556 U.S. at 111 (defense counsel not required to pursue every claim or defense, regardless of its merit, viability or realistic chance for success); <u>Chandler</u>, 240 F.3d at 917 (counsel is not ineffective for failing to raise a non-meritorious objection); <u>see</u>, <u>e.g.</u>, <u>Wright v. Sec'y, Dep't of Corr.</u>, 2011 WL 2731079 (M.D. Fla. July 13, 2011) (<u>Frye</u> hearing was not necessary because DNA is not new or novel under Florida law, and nothing in the record indicated otherwise). Mack's claim is too conclusory and speculative to support relief.

## VII. Conclusion

The Florida courts' rejection of these claims is not contrary to or an unreasonable application of clearly established federal law and is not based on an unreasonable view of the facts.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 14<u>th</u> day of November, 2011.

_____

UNITED STATES MAGISTRATE JUDGE

cc: Craig Mack, *pro se*
    DC# 183427
    Charlotte Correctional Institution
    33123 Oil Well Road
    Punta Gorda, FL 33955

    Helene Catherine Hvizd, AAG
    Office of the Attorney General
    1515 North Flagler Drive
    Suite 900
    West Palm Beach, FL 33401-2299